George **VOILAS, et al., Plaintiffs,**

v.

**GENERAL MOTORS CORP., et al., Defendants.**

**Civil Action No. 95–0487(GEB).**

United States District Court,
D. New Jersey.

May 9, 1997.

Jerald R. Cureton, Cureton, Caplan & Clark, Mount Laurel, NJ, for Plaintiffs.

James J. Crowley, Jr., Carpenter, Bennett & Morrissey, Newark, NJ, for Defendant, General Motors Corporation.

Joseph T. Cleary, Cleary & Josem, Cranford, NJ, for Defendant, Local # 731 International Union, United Automoblie Aeorspace and Agricultural Implement Workers of America.

## MEMORANDUM

WOLFSON, United States Magistrate Judge.

Presently before the Court is the motion by Jerald R. Cureton, Esq. of Cureton, Caplan, & Clark, on behalf of plaintiffs, George Voilas, John Trippa, Wait Wenski, Marietta Berenato, Johnny M. Dollson and Augusta Bud, seeking leave to amend plaintiffs' Complaint to add 176 plaintiffs. The Court has reviewed the moving, opposition, and reply papers, as well as the supplemental submissions, and considers this motion pursuant to *Fed.R.Civ.P.* 78. For the following reasons, plaintiffs' motion to amend their Complaint is granted.

### Background

Plaintiffs are six retired employees of General Motors Corporation ("GM"), who were employed at GM's facility in Trenton, New Jersey ("Plant"). On December 3, 1992, GM announced that the Plant would be closed permanently in the fourth quarter of 1993. On December 7, 1992, the United Automobile Aerospace and Agricultural Implement Workers of America Union ("Union" or "UAW") reiterated this message to its members. Shortly thereafter, GM reached an agreement with the Union to put into effect GM's plan to close down the Plant. Part of this closure plan included inducing employees over the age of 50 to accept an early retirement package, the Special Acceleration Attrition Agreement ("SAAA"). The employees were advised that they had until March 1, 1993 to accept this package. Between December 3, 1992, when GM announced its intention to close the Plant, and March 3, 1993, the date when GM first publicly announced that it was actively seeking a buyer to keep the Plant open, plaintiffs allege that GM and the Union repeatedly told employees that the Plant would be closed. Allegedly relying upon these representations, a number of employees accepted the early retirement package.

On January 31, 1995, plaintiffs instituted this action against GM. The gravamen of plaintiffs' Complaint is that had plaintiffs known when they retired on March 1, 1993, that GM's Trenton Plant would still be open in 1995, they would not have elected to retire under a voluntary early retirement incentive program in 1993.

Subsequently, on June 21, 1995, plaintiffs filed suit against the Union based on the same facts, and alleged that the Union breached its duty of fair representation. On October 27, 1995, the plaintiffs' actions against the Union and GM were consolidated. Plaintiffs then moved for certification as a class, pursuant to *Fed. R. Civ. P*, 23, which was later denied by the Honorable Garrett E. Brown on February 22, 1996. On April 11, 1996, soon after class certification was

denied, plaintiffs filed a motion seeking to amend their Complaint to add more than 160 new plaintiffs. By Order, dated June 17, 1996, the Court denied plaintiffs' motion without prejudice pending the district court's determination of certain dispositive motions to be filed by defendants.

On January 30, 1997, the Honorable Garrett E. Brown denied defendant GM's motion for summary judgment, but granted the Union's motion for summary judgment. Shortly thereafter, on February 14, 1997, plaintiffs filed the instant motion to amend to add 176 new plaintiffs.[1] In the interim, defendant GM filed a motion for reconsideration of Judge Brown's decision to deny summary judgment as to plaintiffs' claims against GM. As a result, this Court adjourned the instant motion until Judge Brown made a final determination on GM's motion for reconsideration. By Memorandum Opinion and Order dated March 26, 1997, Judge Brown denied GM's motion for reconsideration, rendering the instant motion to amend ripe for consideration.

In support of their motion to amend the Complaint to add 176 new plaintiffs, plaintiffs contend that their motion should be granted since it satisfies all of the requirements detailed in *Fed.R.Civ.P.* 15(a). The proposed plaintiffs also seek to preserve a right to appeal Judge Brown's summary judgment in favor of the Union. Rather than file another duplicative action against the Union, plaintiffs request that they be permitted to add the new plaintiffs' claims against the Union, and that these added parties be bound by Judge Brown's decision dismissing the claims against the Union; thus, they would retain the right to appeal this decision, along with the original six plaintiffs.

GM opposes this motion. First, GM contends that, once class certification has been denied, the sole procedural mechanism for these proposed 176 litigants to join in this action is by a motion to intervene, pursuant to *Fed. R. Civ. P*, 24. Alternatively, GM submits that individual lawsuits could be filed. GM argues that these two options are the only valid procedural avenues for these individuals to initiate an action against GM. Hence, GM concludes that plaintiffs' motion to amend is inappropriately asserted, and therefore, should be denied.

In addition, GM submits that even if the Court considers the motion to amend, it should be denied as futile since the proposed plaintiffs' claims are time-barred in light of New Jersey's two year statute of limitations which applies to tortious deprivation of employment claims.[2] Furthermore, because plaintiffs' claims fail to satisfy the requirements for relation back, pursuant to *Fed, R. Civ. P.* 15(c), GM urges this Court to deny plaintiffs' motion to amend their Complaint. Conversely, GM argues, permitting the amendment of 176 new plaintiffs at this late stage in the litigation would be severely prejudicial to defendant's case and would result in undue delays.

The Union also opposes plaintiffs' motion on the basis that the amendment as to the Union is futile in light of Judge Brown's recent decision granting summary judgment in the Union's favor.

In reply, plaintiffs insist that the motion to amend is appropriately asserted against both defendants and should be granted. In particular, plaintiffs point out that there is no statutory or precedential authority which definitively proscribes motions to amend as inappropriate procedural vehicles to join plaintiffs after class certification has been denied. Plaintiffs further argue that the relevant statute of limitations for their common law fraud claims against GM is six years, rather than the six month or two year statute of limitations pressed by defendants. Indeed, plaintiffs propose that this matter is a non-issue since Judge Brown concluded, in his

---

1. Plaintiffs' moving papers filed on February 14, 1997, included a list of 173 putative plaintiffs. By letter dated April 4, 1997, plaintiffs added three more retired employees to this list of prospective litigants. *See* Appendix A, attached hereto, for a complete list of the proposed new plaintiffs. [Editor's Note: Appendix A excluded for publication.]

2. GM asserts that the claims accrued on March 3, 1993, the date on which the proposed new plaintiffs allege that GM announced that it was considering selling the Trenton Plant. Applying a two year statute of limitations, the proposed new plaintiffs' claims expired on March 3, 1995.

opinion dated January 30, 1997, that a six year statute of limitations applies in this case. Thus, plaintiffs urge that since GM has been on notice of these additional claims since at least September 15, 1995, when the motion for class certification was filed, there is no significant prejudice to defendant in adding these defendants at this stage. Additionally, although this motion was filed in the posture of a motion to amend, plaintiffs are equally confidant that the proposed plaintiffs have satisfied the requirements for a motion to intervene. Consequently, plaintiffs urge that this purported technicality should not preclude the proposed plaintiffs from joining in this action. Furthermore, the interests of judicial efficiency favor one action over separate actions. Finally, as to the Union, the prospective plaintiffs do not intend to proceed with the prosecution of the action at this juncture, but will agree to a dismissal of the claims based upon Judge Brown's recent ruling and thus, preserve those claims for appeal.

### Discussion

### I. A Motion to Amend Is An Appropriate Procedural Vehicle To Join the Proposed New Plaintiffs

■ Following the denial of their motion for class certification, plaintiffs moved, pursuant to *Fed. R. Civ, P.* 15(a), to amend their complaint to add more than 160 additional plaintiffs to this case. At the time of this initial request, the parties were in the process of litigating dispositive summary judgment motions. As a result, the Court deferred ruling upon whether the new plaintiffs should be added until the summary judgment motions were decided. On January 30, 1997, Judge Brown decided the summary judgment motions. Plaintiffs now renew their motion to amend their Complaint to add 176 new plaintiffs. GM opposes this motion arguing that the putative plaintiffs may only seek to join this suit by way of a motion to intervene pursuant to *Fed.R.Civ.P.* 24, or alternatively, by initiating individual law suits. *See* GM Brief at 6–13 (citing *Edwards v. Boeing Vertol Co.*, 717 F.2d 761, 765 (3d Cir.1983), *vacated e.g.*, 468 U.S. 1201, 104 S.Ct. 3566, 82 L.Ed.2d 867 (1984), *reinstated,*

750 F.2d 13 (3d Cir.1984)). This Court disagrees.

Federal Rule of Civil Procedure 15(a) advocates a broad entitlement to the amendment of pleadings. Here, the existing plaintiffs move to add additional plaintiffs pursuant to Rule 15(a). This Court finds no legal impediment to such a motion. Nothing in the text of Rule 15, the advisory committee's notes, or any relevant case law, proscribes a plaintiff's right to add parties via a motion to amend.

Yet, GM myopically interprets *Edwards* as holding that motions to intervene or individual lawsuits are the sole procedural vehicles to join plaintiffs in a lawsuit after class certification has been denied. A close reading of *Edwards* and its predecessor cases, however, reveals that the Third Circuit did not render any conclusive decision on the discrete matter at issue in the instant case—the appropriate method to join plaintiffs after class certification has been denied. Any reference in those cases to the applicable procedural route to pursue after the denial of class certification is merely *dicta.*

The plaintiff in *Edwards,* who was not a named party in a prior class action, sought the benefit of the tolling of the statute of limitations for the period in which the class action was pending. *Edwards,* 717 F.2d at 764. In interpreting the limited issue of whether un-named individuals could avail themselves of the benefits of a class, the *Edwards* court reflected upon two prior decisions in which the "court addressed the question [of] whether the claims of individual class members who were not parties should have been litigated." *Edwards,* 717 F.2d at 765 (quoting *Croker v. Boeing Co.,* 437 F.Supp. 1138, 1176 (E.D.Pa.1977), *aff'd,* 662 F.2d 975, 997 (3d Cir.1981)(*en banc* )(quoting *Dickerson v. United States Steel Corp.,* 582 F.2d 827 (3d Cir.1978))). Consequently, while the Third Circuit, in *Edwards* may have noted, in *dicta,* that "[t]he appropriate means by which unsuccessful class members may adjudicate their individual claims is by motion for intervention under Federal Rule of Civil Procedure 24(b)," the Circuit Court did not limit prospective litigants to this pro-

cess to the exclusion of all other alternatives. *Id.*

In general, a motion to amend to add plaintiffs is not precluded by Federal Rule 15(a). *See Fed.R.Civ.P.* 15(a); *See also* 6 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1474, at 549–52 (1990)(instructing that "a party may make a Rule 15(a) amendment to add, substitute, or drop parties to the action") and *Vetere v. O'Reilly,* 1990 WL 124844, \*2–3 (D.N.J.). This Court finds no reason to depart from this general rule to carve out an exception for motions to amend to join additional plaintiffs following the denial of a motion for class certification. Moreover, a distinction between a motion to amend as opposed to a motion to intervene is that, joining plaintiffs by amendment requires that the existing plaintiffs support and seek the inclusion of the additional parties, whereas a motion to intervene can be brought irrespective of the particular desires of the existing parties. The intervenors, independently, seek to join in the litigation, thereby requiring neither the support nor consent of the existing litigants. This distinction is important because while it may be true that intervention will generally be the means by which litigants who are denied certification as a class may seek to join a litigation, existing plaintiffs are also entitled to join additional plaintiffs who were denied class certification, via a motion to amend.

Indeed, several other courts have impliedly sanctioned the use of a motion to amend to join litigants who were denied class certification. *See Nelson v. County of Allegheny,* 60 F.3d 1010, 1011–12 (3d Cir.1995)(where the Third Circuit Court noted, without disapproval, that the district court permitted a motion to amend to add plaintiffs after a motion for class certification was denied); *see also Kresefky v. Panasonic Communications and Systems Co.,* 169 F.R.D. 54, 63 (D.N.J. 1996)(where the district court granted plaintiffs' alternative request to amend their Complaint to add plaintiffs after class certification was denied). Moreover, in *Joshlin v. Gannett River States Publishing Corporation,* 152 F.R.D. 577, 579 (E.D.Ark.1993), the Arkansas court, presented with similar circum-stances, denied class certification, but granted plaintiffs' motion to amend to include ninety five (95) additional plaintiffs, despite the objections raised by one of the defendants. Consequently, this Court finds no legal or procedural impediment to the use of a motion to amend to add plaintiffs after class certification has been denied, provided that the amendment satisfies the requirements of *Fed.R.Civ.P.* 15(a).

Furthermore, plaintiffs' submissions satisfy the threshold requirements of a motion to intervene, pursuant to *Fed.R.Civ.P.* 24. Intervention is the procedure by which an outsider with an interest in a lawsuit may appear in a lawsuit as a party though he/she has not been named as a party by the existing litigants. *See Fed.R.Civ.P.* 24; *see also* 7C CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE §§ 1901–02, at 228–32 (1990). Federal Rule of Civil Procedure 24 provides for both permissive intervention and intervention as of right.

Under Rule 24(a), a non-party can intervene as of right where: "(1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation." *Mountain Top Condominium Association v. Dave Stabbert Master Builder, Inc.,* 72 F.3d 361, 365–66 (3d Cir.1995) (citation omitted); *see also United States v. Alcan Aluminum, Inc.,* 25 F.3d 1174, 1181 (3d Cir. 1994).

The court maintains discretion, pursuant to Rule 24(b), to permit an applicant who does not satisfy the test under Rule 24(a), to intervene if his claim or defense and the main action have a question of law or fact in common. 7C CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE §§ 1902, at 230–31 (1990). "In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *Fed.R.Civ.P.* 24(b).

■ Here, assuming that the moving papers were submitted in the posture of a motion to intervene, this Court finds that the prospective plaintiffs have satisfied both the requirements for intervention as of right and permissive intervention. First, plaintiffs' application is timely. The moving papers to join the over 160 new plaintiffs, including authorizations from the individual plaintiffs, were originally submitted in April of 1996.[3] In light of the procedural history and circumstances of this case, as previously mentioned, this renewed application to join the additional plaintiffs is certainly timely. Second, as retired employees, who were allegedly induced to accept the early retirement package based on the representations of GM officials, they retain interests similar to those of the six existing plaintiffs.[4] Third, the putative plaintiffs' interests are affected by the outcome of this litigation in that certain determinations in the instant litigation, such as a finding that GM made certain statements or omitted relevant information, will likely hold precedential weight in any succeeding actions. Finally, plaintiffs' interests are not adequately represented by the existing litigants. In denying class certification, Judge Brown specifically noted that the plaintiffs' claims and their entitlement to relief are particularized and turn on each individual plaintiff's understanding and reliance upon the representations of the GM officials. Thus, in order to attain relief, each plaintiff must individually join in the lawsuit or forego any right to recovery. Based on the foregoing, the proposed plaintiffs have complied with the requirements for intervention as of right.[5]

Thus, this Court finds it unnecessary to require a motion for intervention to be filed.

Such a motion would effectively place all of the parties, including the Court, in essentially the same position as it is at present, except that the Court would analyze the motion under Rule 24 rather than Rule 15(a). Although plaintiffs chose to file a motion to amend to join these new plaintiffs, this Court finds that the moving papers submitted by the existing and proposed plaintiffs satisfy the requirements for a motion to intervene as well. Hence, even if, as defendant GM suggests, a motion to intervene is the preferred mechanism for joining parties after class certification has been denied, plaintiffs have fulfilled the threshold requirements for intervention. This Court will not further delay these proceedings on this ground.

## II. Motion to Amend

■ Federal Rule of Civil Procedure 15(a) codifies a liberal approach to the amendment of pleadings to promote the goal of deciding cases on the merits instead of disposing of them on technicalities. *See* 6 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1471, at 502–507 (1990). Rule 15(a) provides, in pertinent part, that:

A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served. . . . Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

While courts have broad discretion to decide motions for leave to amend the pleadings, *Zenith Radio Corp. v. Hazeltine Research,*

---

3. Plaintiffs stipulate that they have the necessary authorizations from the proposed plaintiffs to join in this litigation. *See* Plaintiff's Reply Brief at 2–3 n. 1.

4. Specifically, there are common questions of law and fact that bind the existing and proposed plaintiffs. The original Complaint alleges omissions from, and misrepresentations in, bulletins and oral statements issued by the defendants. The claims of the proposed plaintiffs will be based upon these same alleged omissions and misrepresentations. In addition, all of the plaintiffs executed the same form of SAAA (early re-

tirement agreement). *Voilas, et al. v. General Motors Corp., et al.,* Civil Action No. 95–0487(GEB)(Memorandum Opinion and Order, February 22, 1996) at 6–7.

5. Having satisfied the more stringent requirements of a motion to intervene as of right, it follows that plaintiffs' moving papers would also satisfy the requirements for permissive intervention. Clearly, the proposed plaintiffs' claims implicate common issues of law and fact with those of the existing plaintiffs. In addition, the instant motion is not unjustifiably late or prejudicial to defendant's rights. *See infra,* at 396–397.

*Inc.*, 401 U.S. 321, 330, 91 S.Ct. 795, 802, 28 L.Ed.2d 77 (1971); *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962), the Supreme Court has observed that courts are to heed Rule 15(a)'s mandate that amendments are to be granted "freely" in the interests of justice. *Foman*, 371 U.S. at 182, 83 S.Ct. at 230. The grounds upon which a court may deny a motion to amend include unfair prejudice, futility, and undue delay. *Id.; see also Heyl & Patterson Int'l, Inc. v. F.D. Rich Housing of Virgin Islands, Inc.*, 663 F.2d 419, 425 (3d Cir.1981), *cert. denied*, 455 U.S. 1018, 102 S.Ct. 1714, 72 L.Ed.2d 136 (1982).

"[P]rejudice to the non-moving party is the touchstone for the denial of an amendment." *Cornell & Co. v. Occupational Safety & Health Review Comm'n*, 573 F.2d 820, 823 (3d Cir.1978). To justify the denial of a motion to amend, the asserted prejudice must amount to more than mere inconvenience to the non-moving party. *See Cuffy v. Getty Refining & Mktg. Co.*, 648 F.Supp. 802, 806 (D.Del.1986). Instead, the non-moving party must establish that the amendment "unfairly disadvantage[s] or deprive[s][it] of the opportunity to present facts or evidence which it would have offered had the amendments been timely." *Heyl*, 663 F.2d at 426 (citation omitted); *Azarbal v. Medical Ctr. of Delaware, Inc.*, 724 F.Supp. 279, 285 (D.Del. 1989). If the proposed amendment requires the reopening of discovery, the prejudice to the non-moving party will be considered greater than if the proposed amendment presents only a new issue of law. *Harrison Beverage Co. v. Dribeck Importers, Inc.*, 133 F.R.D. 463, 469 (D.N.J.1990).

Delay, in and of itself, is an insufficient ground upon which to deny a motion to amend. The non-moving party must show that the moving party's delay in seeking the amendment will unfairly prejudice it. *Cornell*, 573 F.2d at 823; *DiLoreto v. Borough of Oaklyn*, 744 F.Supp. 610, 615 (D.N.J.1990); *Harrison Beverage*, 133 F.R.D. at 468. Where the non-moving party asserts undue delay, "the obligation of the trial court in its disposition of the motion is to articulate the imposition or prejudice caused by the delay, and to balance those concerns against the movant's reason for delay in asserting the motion." *Coventry v. United States Steel Corp.*, 856 F.2d 514, 520 (3d Cir.1988).

A futile amendment is one which would not withstand a motion to dismiss. *Massarsky v. General Motors Corp.*, 706 F.2d 111, 125 (3d Cir.), *cert. denied*, 464 U.S. 937, 104 S.Ct. 348, 78 L.Ed.2d 314 (1983). Hence, if the amendment is "frivolous or advances a claim or defense that is legally insufficient on its face, the court may deny leave to amend. If a proposed amendment is not clearly futile, then denial of leave to amend is improper." WRIGHT et al., *supra* § 1487, at 637–42. In other words, the applicable standard to determine futility is whether the amendment is "sufficiently well-grounded in fact or law" to demonstrate "that it is not a frivolous pursuit." *Harrison Beverage Co. v. Dribeck Importers, Inc.*, 133 F.R.D. 463, 469 (D.N.J.1990). Applying this standard, the Third Circuit, in *Arab African International Bank v. Epstein*, upheld the lower court's ruling to deny plaintiff's leave to amend where amendment would be futile. *Arab African International Bank v. Epstein*, 10 F.3d 168, 174 (3d Cir.1993). In *Arab African International Bank*, the Court concluded that an amendment to add a RICO claim would be futile in light of the expiration of the relevant statute of limitations period. *Id.*

### (a) General Motors

In the instant case, plaintiffs' motion to amend to add 176 new plaintiffs' claims against defendant GM is neither futile, untimely, nor prejudicial. Insisting that a two year statute of limitations applies to plaintiffs' fraud claims, GM contends that the proposed amendment is time-barred. However, this Court finds that the relevant statute of limitations for plaintiffs' common law fraud claims is six years, and therefore plaintiffs' claims are not time-barred.

Approximately two years ago, in plaintiffs' initial application to amend to add over 160 new plaintiffs, plaintiffs insisted that the six year statute of limitations applied to the proposed plaintiffs' common law fraud claims. Defendants, GM and the Union, disagreed, and instead proposed that either a six month

or a two year statute of limitations applied. At oral argument on June 17, 1996, the Court postponed its final determination on the merits of the motions to amend until Judge Brown made a finding as to the dispositive issue of which statute of limitations applies to plaintiffs' common law fraud claims.

In Judge Brown's opinion, dated January 30, 1997, the Court noted that the applicable statute of limitations in this case is six years. Specifically, the Court stated that "the six month statute of limitations of the LMRA and NLRA is wholly inapplicable in this case. Instead, [the Court found that] New Jersey's six year statute of limitations for an injury to the rights of another applies. *See* N.J.S.A. 2A: 14–1; *see also Hartford Accident and Indemnity Co. v. Baker,* 208 N.J.Super. 131, 504 A.2d 1250 (Law Div.1985)(applying the six year statute of limitations to claim of fraud). Accordingly, plaintiffs are not time-barred." *Voilas. et al. v. General Motors Corp., et al.,* Civil Action No. 95–0487(GEB)(Memorandum Opinion and Order, January 30, 1997) at 14. Subsequently, in considering GM's motion for reconsideration of the order denying GM's motion for summary judgment, Judge Brown again clarified that the six year statute of limitations applies in this case. Indeed, the court stated that "[d]efendant's objection to the Court's finding that a six-year statute of limitations applies to common law fraud claims under New Jersey law is a non-issue. *See* N.J.S.A. 2A:14–1; *D'Angelo v. Miller Yacht Sales,* 261 N.J.Super. 683, 688, 619 A.2d 689 (App.Div. 1993); *Hartford Accident and Indem. Co. v. Baker,* 208 N.J.Super. 131, 504 A.2d 1250 (Law Div.1985)." *Voilas, et al. v. General Motors Corp., et al.,* Civil Action No. 95–0487(GEB)(Memorandum Opinion and Order, March 26, 1997) at 7 n. 2.

 Defendant, however, maintains that the language in Judge Brown's opinion concerning the relevant statute of limitations is, at best, merely *dicta.* Relying primarily upon *Montells v. Haynes,* 133 N.J. 282, 627

A.2d 654 (1993), GM asserts that this Court must look to the nature of the injury alleged, rather than the asserted legal theory to determine the applicable statute of limitations. Here, while plaintiffs' asserted claim is based upon common law fraud, defendants contend that the substance of the claimed injury is for tortious deprivation of employment which is governed by a two year statute of limitations. *See* GM Brief at 15 (citing *Burns v. Bethlehem Steel,* 20 N.J. 37, 39–40, 118 A.2d 544 (1955); *Bauer v. Bowen,* 63 N.J.Super. 225, 229, 164 A.2d 357 (App.Div.1960); *Tackling v. Chrysler Corp.,* 77 N.J.Super. 12, 15–17, 185 A.2d 238 (Law Div.1962); *Goodman v. Lukens Steel Co.,* 482 U.S. 656, 661–64, 107 S.Ct. 2617, 2621–23, 96 L.Ed.2d 572 (1987)). GM's reliance upon these cases is misplaced.[6]

In the instant action, plaintiffs are asserting claims against GM predicated upon common-law fraud based on GM's allegedly fraudulent misrepresentations. Unlike in the aforementioned cases cited by GM, where the claims for tortious injuries were merely veiled in terms of fraud claims, plaintiffs' claims are clearly based on common law fraud. Essentially, plaintiffs contend that they were fraudulently induced by GM officials to accept the early retirement package. Hence, it is a straightforward fraud claim, not a claim for tortious deprivation of employment. Indeed, in denying GM's motion for summary judgment, Judge Brown determined that "plaintiffs have presented sufficient evidence to create a genuine issue of material fact that GM defrauded plaintiffs." *Voilas, et al. v. General Motors Corp. et al.,* Civil Action No. 95–0487(GEB)(Memorandum Opinion and Order, January 30, 1997) at 16–22. The court listed and applied the five elements of a fraud claim to ultimately decide that plaintiffs have presented an actionable fraud claim. Consequently, New Jersey's six year statute of limitations for common-law fraud, not the two year statute of limitations for personal injuries, governs in the case at hand.[7] *See* N.J.S.A. 2A:14–1; *D'Angelo v.*

6. Nevertheless, assuming that the language in Judge Brown's opinions is merely *dicta,* this disputed dispositive issue concerning the applicable statute of limitations is, then, more appropriately asserted by GM in a summary judgment motion before Judge Brown, rather than in the context of the instant motion to amend.

7. Because this Court has concluded that a six year statute of limitations applies, defendant

*Miller Yacht Sales,* 261 N.J.Super. 683, 688, 619 A.2d 689 (App.Div.1993); *Hartford Accident and Indem. Co. v. Baker,* 208 N.J.Super. 131, 504 A.2d 1250 (Law Div.1985). Thus, the proposed plaintiffs' fraud claims are not time-barred, and therefore defendant's futility argument cannot stand.

■ Likewise, GM's charge, that permitting this allegedly untimely amendment of 176 new plaintiffs would be prejudicial to its litigation rights at this late stage, is without merit. GM correctly notes that this action was originally filed over two years ago with only six plaintiffs, and discovery has since proceeded on course. However, from the inception of this litigation, the defendants were aware that plaintiffs were contemplating joining additional plaintiffs. At the very least, by September 15, 1995, when plaintiffs filed their first notice of motion for class certification, GM was on notice of potential additional claimants. After class certification was denied on February 22, 1996, plaintiffs filed their first motion to amend to add over 160 plaintiffs, again putting GM on notice of these additional claimants. This original motion to amend was deferred by the Court in light of the pendency of certain dispositive motions to be presented before Judge Brown.[8] Despite plaintiffs' timely efforts to pursue their rights, the litigation process was justifiably delayed. Recognizing that GM was on notice of these potential claimants for quite some time, their contention that the addition at this stage in the litigation is prejudicial, lacks merit. Thus, while GM argues that the addition of 173 plaintiffs would drastically change the magnitude of this litigation, particularly in light of the fact that discovery as to the six original plaintiffs is near completion, this Court is not convinced that the prejudice to GM is so over-reaching that it cannot be abated. Indeed, one of the options the Court will consider and discuss with the parties is phasing and bifurcating the discovery and trial of the six original plaintiffs from the added parties. The new parties will be permitted to join the lawsuit, but discovery as to their individualized claims can be held in abeyance pending the completion of discovery and trial of the six original plaintiffs. The parties shall be prepared to discuss such an alternative at the next conference.

Moreover, permitting the amendment serves the interests of justice and judicial efficiency. Clearly, if the Court denied plaintiffs' motion to amend, the proposed plaintiffs retain their right to initiate their own separate actions, either together in one lawsuit or in 176 individual lawsuits.

The new plaintiffs and GM would then have to re-litigate the entire case from its inception, resulting in unnecessary duplication of effort. In light of the fact that the substance of all of the putative plaintiffs claims are substantially similar to those of the existing plaintiffs, in that there are common questions of law and fact regarding the representations and omissions of GM officials, such an exercise would be counterproductive for all parties involved, including defendant GM and the Court. Hence, this Court will grant plaintiffs' motion to add 176 new plaintiffs. To accommodate for the delays and to alleviate any potential prejudice to GM, this Court will confer with the parties and adjust the scheduling of this litigation as necessary.

### (b) The Union

■ Plaintiffs further requests leave to amend their Complaint against the Union. By Opinion and Order dated January 30, 1997, Judge Brown dismissed the six original plaintiffs' claims against the Union. Rather than engaging in the formality of instituting a separate lawsuit against the Union on behalf of the 176 new plaintiffs, claiming the identical allegations as those contained in the original Complaint against the Union, the proposed plaintiffs seek to be bound by Judge Brown's decision to dismiss the claims against the Union. Hence, instead of re-litigating the same issues, the proposed

---

GM's contention that relation back does not apply is a non-issue.

8. At oral argument on June 17, 1996, this Court even implied that it was inclined to grant the

motion to amend to add over 160 proposed plaintiffs, provided that the motion was not time-barred, once again placing defendant GM on notice of the potential claimants.

plaintiffs seek only to preserve their right to appeal the denial of these claims along with the existing plaintiffs.

The defendant Union opposes this motion, stating simply that the proposed amendment would be futile, in light of Judge Brown's opinion. In addition, the Union contends that it would be severely prejudiced by such an amendment. "[I]f plaintiffs' motion for leave to amend the Complaint against the Union is granted, the Union will be forced to answer the Complaint and participate in discovery with respect to the additional plaintiffs, and ultimately file another motion for summary judgment, merely to allow plaintiffs to 'preserve the rights of the new plaintiffs to appeal.'" Union Brief at 5. Thus, the Union urges this Court to deny plaintiffs' request to amend the Complaint against the Union.

This Court finds that considerations of justice and judicial efficiency militate towards permitting plaintiffs' amendment against the Union as well. Plaintiffs' original application to amend to add claims against both defendants was initiated prior to the disposition of the dispositive motions before Judge Brown. Consequently, this Court deferred judgment upon the substance of plaintiffs' original motion to amend until Judge Brown made a conclusive determination as to the applicable statute of limitations. Thereafter, in his opinion dismissing the Union, Judge Brown found that the original plaintiffs' claims against the Union failed because plaintiffs neglected to exhaust their internal union remedies. Thus, Judge Brown never reached the merits of plaintiffs' alternative arguments, including the Union's contention that plaintiffs' action was time-barred.

The question for this Court to determine is whether it will allow the 176 putative plaintiffs to file their claims in the instant action or whether the Court will compel them to file a separate action against the Union alleging the same claims. In the event that a separate action is filed, these new plaintiffs would inevitably arrive at the identical juncture as the existing plaintiffs—the Court would dismiss their claims against the Union for failing to avail themselves of the internal Union remedies. This process would require the parties, the new plaintiffs, and the Union, to engage in the fruitless endeavor of filing pleadings and exchanging discovery until the Union filed another dispositive motion to dismiss. Rather than proceeding through this time consuming formality, this Court will grant plaintiffs' motion to amend, on the following conditions: that the Union need not file any responsive pleadings, that the 176 new plaintiffs will be bound by Judge Brown's decision to dismiss the claims against the Union, and that plaintiffs will preserve their right to appeal this decision along with the existing plaintiffs. The parties are instructed to submit an Order to the Honorable Garrett E. Brown dismissing the new plaintiffs' claims against the Union, but preserving their right to appeal. An appropriate Order shall follow.

### ORDER

This matter having been opened to the Court by Jerald R. Cureton, Esq., counsel for plaintiffs, George Voilas, et al., seeking leave to amend their complaint pursuant to *Fed.R.Civ.P.* 15(a), and the Court having considered the moving, opposition and reply papers, as well as the supplemental submissions, and the Court further having entered a Memorandum on this date setting forth the Court's decision in this matter, which is being considered pursuant to *Fed.R.Civ.P.* 78, and for good cause shown,

IT IS on this 9th day of May, 1997,

ORDERED that plaintiffs' motion for leave to amend their Complaint to add 176 plaintiffs (identified in Appendix A, attached hereto) against defendant, General Motors, is granted; and it is further

ORDERED that plaintiffs' motion for leave to amend their Complaint to add 176 plaintiffs against defendant, United Automobile Aerospace and Agricultural Implement Workers of America, is granted; and it is further

ORDERED that these 176 new plaintiffs shall be bound by the Honorable Garrett E. Brown's decision to dismiss the plaintiffs' claims against the Union for failure to exhaust their internal Union remedies, *see Voilas. et al. v. General Motors Corp., et al.,* Civil Action No. 95–0487(GEB)(January 30,

1997) at 25, and that these plaintiffs shall retain their right to appeal Judge Brown's decision; and it is further

ORDERED that plaintiffs shall file their Amended Complaint within ten (10) days from the date of this Order; and it is further

ORDERED that the parties submit an Order to the Honorable Garrett E. Brown dismissing the new plaintiffs' claims against the Union, but preserving their right to appeal Judge Brown's decision; and it is further

ORDERED that an in person status conference shall be held before the undersigned on June 6, 1997 at 2:00 p.m.