845 A.2d 658 (2004)
368 N.J. Super. 134
Felice DiIORIO, Plaintiff-Respondent,
v.
STRUCTURAL STONE & BRICK CO., INC., Defendant/Third Party Plaintiff-Appellant, and
Two J Development Corp., Jerold A. Hurwitz and Western Carolina Stone Center And Supply, Inc., Third-Party Defendants.
Superior Court of New Jersey, Appellate Division.
Argued September 9, 2003.
Decided April 2, 2004.
*659 Kevin J. Conyngham, Saddle Brook, argued the cause for appellant (Zimmerer, Murray & Conyngham, attorneys; Mr. Conyngham, on the brief).
James J. Savage, argued the cause for respondent (Scarpone Staiano & Savage, attorneys; Mr. Savage, on the brief).
Before Judges PRESSLER, CIANCIA[1] and R.B. COLEMAN.
The opinion of the court was delivered by R.B. COLEMAN, J.A.D.
We granted leave to defendant Structural Stone & Brick Company (Structural Stone) to appeal from the October 16, 2002, interlocutory order of the Law Division, Morris County, denying its motion for summary judgment. At issue is whether the claims asserted by plaintiff Felice DiIorio for economic losses arising out of the deterioration of the stone façade of his residence are governed by the four year statute of limitation of the Uniform Commercial Code (U.C.C.), N.J.S.A. 12A:2-725(1), or by the six year statute of limitations applicable to tortious injury to real or personal property, N.J.S.A. 2A:14-1. The motion judge ruled the six year statute of limitation applied and gave the following as the reasons for his order:
This is a product liability case [and] not governed by the U.C.C. Statute of Limitation.
[Plaintiff] bought a house containing arguably defective stones not fit for exterior use which resulted in damage to [plaintiff's] house. Thus there was damage to the entire house (leaks, deterioration, etc.) and not just to stones. [Plaintiff] purchased a house not individual stones [and] the stones are an integral part of the house, a "fixture."
Fact questions exist as to [Consumer Fraud Act] [and] punitive damages.
Based upon our careful consideration of the defendant's arguments in light of the record and the applicable law, we agree that plaintiffs' claims are governed by the *660 six year statute of limitations; however, in our view the transaction was primarily one for the professional services of a builder in which Structural Stone supplied stone incidental to the contract for the construction of residential premises. We also agree with the motion judge that fact questions preclude the dismissal of plaintiff's claims asserted under the Consumer Fraud Act, N.J.S.A. 56:8-1 to -20. We, therefore, affirm the denial of defendant's motion to dismiss. We remand the denial of Structural Stone's alternative motion for reconsideration of the order dismissing its third party complaint against its supplier, Western Carolina Stone Center and Supply Inc. (Western Carolina).
On a motion for summary judgment, the trial court properly views the facts in the light most favorable to non-movant giving him the benefit of all legitimate inferences. R. 4:46-2(c); Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146, 156 (1995). So viewed, the record establishes that in April 1994, plaintiff entered into an agreement with Two J. Development Corp. and Jerald A. Hurwitz (collectively referred to as the builder) for the construction of a home in a luxury residential development. One of the features plaintiff desired in the home was a stone façade. In the fall of 1994, the builder arranged for plaintiff to visit his stone supplier, Structural Stone. There, plaintiff met with Thomas Loungo, who showed him displays and affirmatively represented to him that all of the stones in those displays were of high quality and suitable for use on the exterior of a home. He said plaintiff's choice was purely a matter of personal taste. Plaintiff made his selection and in due course, construction was completed. There was no separate and discrete transaction between plaintiff and Structural Stone. The stone was included as part of plaintiff's agreement with the builder for the cost of construction of the home.
Plaintiff closed title on his new home on May 17, 1995. In the spring of 1996, he first noticed problems. The stone began to flake and to exhibit a "crystallization effect." Plaintiff informed the builder, who did a visual inspection and told plaintiff the stone needed to be sealed."Later that spring, Tom Luongo of Structural Stone also examined the stone. He reiterated what the builder had told plaintiff, that the stone simply needed to be sealed. Because the builder failed to follow up on his promise to seal the stone, in the spring of 1997 plaintiff retained a different contractor to apply a sealant. The problem continued. The initial flaking was like dust, but eventually "large pieces of stone were falling off. The stone was flaking like it was a piece of cheese being sliced." The stones seemed porous, permitting moisture to infiltrate the home causing staining, flaking and shearing of the interior and exterior stone. Finally, the stone had to be removed and replaced. This resulted in other damage to the house, the deck and the landscaping.
On February 18, 1997, plaintiff and another couple who had purchased a home constructed by the builder in the same residential development commenced a civil action against the builder and the realty company that had promoted their real estate transactions. Among other things, plaintiff complained about the exterior and interior stone flaking off. Shortly before that civil action was to be listed for trial, plaintiff moved for leave to amend his complaint to add Structural Stone as an additional party. By order dated October 25, 1999, that requested relief was "denied without prejudice to plaintiffs' right to assert such claims in a subsequent litigation."[2]
*661 Plaintiff commenced this action on May 19, 2000. Structural Stone was the only named defendant. On September 18, 2001, Structural Stone moved for an order permitting it to file a third party complaint or in the alternative to dismiss plaintiff's complaint under the entire controversy doctrine. The motion to dismiss was denied, but leave was granted permitting Structural Stone to file the third party complaint against Western Carolina and the builder. On August 16, 2002, Western Carolina moved to dismiss Structural Stone's third party complaint contending that its claim was barred by the four year statute of limitations of the U.C.C., N.J.S.A. 12A:2-725(1). That motion was granted. Structural Stone then moved to dismiss plaintiff's complaint, contending that his complaint should likewise be barred by the U.C.C. statute of limitations. This appeal ensued upon leave granted from the denial of that motion and the denial of Structural Stone's request for reconsideration of the dismissal of its third party complaint against Western Carolina.
At the outset, we reject defendant's argument that plaintiff's complaint should have been dismissed under the entire controversy doctrine. Plaintiff's claim was expressly preserved in the order denying his motion for leave to join Structural Stone in the original action against the builder. "[T]he polestar for the application of the [entire controversy] doctrine is `[j]udicial fairness.'" Interchange State Bank v. Veglia, 286 N.J.Super. 164, 189, 668 A.2d 465, 478 (App.Div.1995), certif. denied, 144 N.J. 377, 676 A.2d 1092 (1996). "[A] party whose constituent claim arises during the pendency of the action risks its loss unless he apprises the court and his adversary of its existence and submits to judicial discretion the determination of whether it should be joined in that action or reserved." Brown v. Brown, 208 N.J.Super. 372, 382, 506 A.2d 29, 34 (App.Div.1986). Where, as here, the court has expressly reserved the plaintiff's right to maintain the second action or where its rulings on related issues indicate it was likely to have reserved that right, the preclusive effect of the entire controversy does not apply.
Defendant's challenge to the trial court's denial of its motion under the U.C.C. is also without merit. At the heart of defendant's challenge is its contention that the recovery of economic losses caused by goods that damage only the goods themselves are recoverable only in accordance with the comprehensive provisions of the U.C.C. and not pursuant to theories of tort. See Spring Motors Distributors, Inc. v. Ford Motor Co., 98 N.J. 555, 561, 489 A.2d 660, 663 (1985); Alloway v. General Marine Industries, L.P., 149 N.J. 620, 626-30, 695 A.2d 264, 267-69 (1997). See also East River S.S. v. Transamerica Delaval, 476 U.S. 858, 871-72, 106 S.Ct. 2295, 2302-03, 90 L.Ed.2d 865, 877-78 (1986). More specifically, in speaking of claims brought by a commercial buyer, the New Jersey Supreme Court in its opinion in Spring Motors, supra, ruled
[A] commercial buyer seeking damages for economic loss resulting from the purchase of defective goods may recover from an immediate seller and a remote supplier in a distributive chain for breach of warranty under the U.C.C., but not in strict liability or negligence. We hold also that the buyer need not establish privity with the remote supplier *662 to maintain an action for breach of express or implied warranties. Accordingly, the four-year period of limitations provided by the Code, N.J.S.A. 12A:2-725, not the six-year general statute of limitations N.J.S.A. 2A:14-1, determines the time within which an action must be commenced against the immediate seller and remote supplier.
[98 N.J. at 561, 489 A.2d at 663.]
More recently, the Court extended that holding to transactions in goods involving non-commercial buyers. See Alloway v. General Marine Industries, L.P., supra, 149 N.J. at 641, 695 A.2d at 274.
The rulings in Spring Motors and Alloway do not mean that actions for economic loss are cognizable only under the U.C.C. Common law and statutory claims are still available to consumers, if goods cause damage to other property.[3] On the other hand, the term "product seller" under the Product Liability Act "does not include: (1)[a] seller of real property; or (2)[a] provider of professional services in any case in which the sale or use of a product is incidental to the transaction and the essence of the transaction is the furnishing of judgment, skill or services[.]" N.J.S.A. 2A:58C-8(1) and (2). For example, under the New Jersey Product Liability Act, See N.J.S.A. 2A:58C-1 to 11, a "claimant" is one who brings a claim for harm caused by a product. "Harm" is defined under the Act as "physical damage to property, other than to the product itself." Plaintiff claims the stones installed on his house caused damage to other portions of the house, to the deck and to the landscaping. The economic consequences were therefore not limited to the value of the stones themselves and a claim for recovery of such economic losses would not be governed by the U.C.C.
Article 2 of the U.C.C. applies to transactions in goods. N.J.S.A. 12A:2-102. "`Goods' mean all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other then the money in which the price is to be paid, investment securities and things in action." N.J.S.A. 12A:2-105(1). Thus, by definition, the U.C.C. and its statute of limitations does not apply to transactions in real property. Viewing the transaction in the light most favorable to plaintiff, it was a transaction in real property or, alternatively, a transaction for the rendition of services, namely the construction of residential premises which incidentally included the provision of certain goods.
Obviously, a transaction also may be viewed as a hybrid of sales and services. As the trial judge noted "plaintiff bought a house containing arguably defective stones not fit for exterior use which resulted in damage to [the] house." Where there is a mixed transaction, one must ascertain the primary purpose of the transaction. In Integrity Material v. Deluxe Corp., 317 N.J.Super. 406, 412, 722 A.2d 552, 555 (App.Div.), certif. denied, 160 N.J. 91, 733 A.2d 496 (1999), we stated:

*663 When a contract is a mixed contract for goods and services, a court must determine whether the sales or services aspect predominates. Custom Communications Eng'g, Inc. v. E.F. Johnson Co., 269 N.J.Super. 531, 537, 636 A.2d 80[, 83] (App.Div.1993). See also Huyler Paper Stock Co. v. Information Supplies Corp., 117 N.J.Super. 353, 360, 284 A.2d 568[, 572] (Law Div.1971). To make this determination, courts look to the language and circumstances surrounding the contract, the relationship between the goods and services, the compensation structure and the intrinsic worth of the goods provided. Quality Guaranteed Roofing, Inc. v. Hoffmann-La Roche, Inc., 302 N.J.Super. 163, 166-67, 694 A.2d 1077[, 1079-80] (App.Div.1997).
Here, plaintiff entered into a transaction with a builder and although he was introduced to the builder's supplier of stone, the predominant aspect of his transaction was with the builder. The price paid by plaintiff to the builder included the value of the stone and labor costs associated with its installation onto the façade of the home. To the extent the transaction may be rightly characterized as a transaction in goods, that aspect was, at most, incidental. Under such circumstances, the four year statute of limitations of the U.C.C. does not bar plaintiff's cause of action.
The trial court also correctly held that factual questions exist as to the claim under the Consumer Fraud Act.[4] That claim is governed by the six year statute of limitations. D'Angelo v. Miller Yacht Sales, 261 N.J.Super. 683, 686, 619 A.2d 689, 690 (App.Div.1993). Contrary to defendant's arguments, the Act may be violated by the knowing concealment, suppression or omission of any material fact with the intent that others rely on such concealment, suppression or omission in connection with the sale. Plaintiff claims the builder and his supplier knew the intended use, knew or should have known the stones were not fit for that purpose, but nevertheless failed to disclose that knowledge to him as the prospective homeowner. Plaintiff also claims that representatives of Structural Stone, the supplier, concealed or misrepresented the seriousness of the defective nature of the stone when the problem was brought to their attention.
The Consumer Fraud Act, in contrast to the U.C.C., does apply to real estate. Pursuant to N.J.S.A. 56:8-19 "[a]ny person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act ... may bring an action...." See Gennari v. Weichert Co. Realtors, 148 N.J. 582, 604, 691 A.2d 350, 364 (1997); Strawn v. Canuso, 140 N.J. 43, 60, 657 A.2d 420, 429 (1995). The Consumer Fraud Act declares the following to be an unlawful practice:
The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate[.]
[N.J.S.A. 56:8-27.] *664 Plainly, the allegations of plaintiff's complaint raise genuine questions of fact under the Consumer Fraud Act.
Finally, as to Structural Stone's motion for reconsideration of the dismissal of its third party claim against West Carolina, the original supplier of the stones, we note that the order is not final. We further observe that an erroneous grant of summary judgment may be vacated to permit a defendant to assert a claim for indemnification against its distributor. See Johnson v. Cyklop Strapping Corp., 220 N.J.Super. 250, 531 A.2d 1078 (App.Div.1987) certif. denied, 110 N.J. 196, 540 A.2d 189 (1988). See also Mettinger v. Globe Slicing Mach. Co., 153 N.J. 371, 388-90, 709 A.2d 779, 787-88 (1998); R. 4:8-1. Although Structural Stone's third party action against West Carolina was held to be barred by the U.C.C. statute of limitations, it now argues that it is entitled to common law indemnification, as to which a distributor's cause of action for indemnification against its supplier would accrue when the plaintiff recovers a judgment against it. See e.g., Holloway v. State, 125 N.J. 386, 399, 593 A.2d 716, 722 (1991); McGlone v. Corbi, 59 N.J. 86, 94-5, 279 A.2d 812, 816-17 (1971); Kimball Intern. v. Northfield Metal, 334 N.J.Super. 596, 615, 760 A.2d 794, 804 (App.Div.2000), certif. denied, 167 N.J. 88, 769 A.2d 1051 (2001) (quoting Mettinger, supra, 153 N.J. at 387, 709 A.2d at 787). This issue should be addressed first by the trial court.
We affirm the denial of defendant's motion for summary judgment, and we remand for further proceedings in the Law Division.
NOTES
[1] Judge Ciancia did not participate in oral argument, but has, with the consent of counsel, been added to the panel deciding the matter.
[2] The record does not disclose the outcome of plaintiff's civil action against the builder and the realtor.
[3] The general statute of limitations set forth in N.J.S.A. 2A:14-1 provides:

Every action at law for trespass to real property, for any tortious injury to real or personal property, for taking, detaining, or converting personal property, for replevin of goods or chattels, for any tortious injury to the rights of another not stated in sections 2A:14-2 and 2A:14-3 of this Title, or for recovery upon a contractual claim ... shall be commenced within 6 years next after the cause of any such action shall have accrued.
This section shall not apply to any action for breach of any contract for sale governed by section 12A:2-725 of the New Jersey Statutes.
[4] In Alloway, the Court expressly recognized that the Legislature had adopted the Consumer Fraud Act to provide generous protection to defrauded consumers, supra, 149 N.J. at 640, 695 A.2d at 274.