Dorothy M. MOORE, Hawthorn Enterprise, Inc., a Missouri Corporation, et al., Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. 93–134L.

United States Court of Federal Claims.

Dec. 23, 1998.

William J. Travis and Stephen Robert Clark, Greensfelder, Hemker & Gale, P.C., St. Louis, Missouri, for plaintiff.

Lisa A. Holden, U.S. Department of Justice, Environmental & Natural Resources Division, General Litigation Section, for defendant.

## ORDER

BRUGGINK, Judge.

This is a class action brought by persons claiming that their rights to recovery of lands underlying an abandoned railroad track were taken by the United States without compensation when it permitted interposition of a recreational trail used by the general public. Pending is a motion by plaintiffs for clarification of the class certification order. As explained by the court during oral argument, and as plaintiffs agreed, the motion is more properly treated as one for leave to amend the complaint to include additional plaintiffs as part of their class.[1] As is often the case

---

1. A motion for clarification assumes the necessary conclusion that the putative new plaintiffs were present in the suit from the outset.

with an amendment to add parties, the real issue is the bar of the limitations period, in this case, six years. *See* 28 U.S.C. § 2501 (1994). The motion has been fully briefed and oral argument was held before the court on December 8, 1998. Familiarity with the prior opinion is assumed. *See Moore v. United States*, 41 Fed.Cl. 394 (1998). For the reasons stated below, the motion to amend the complaint is denied.

## BACKGROUND

The current class includes owners of property traversed by the Katy Trail, a recreational trail, between Machens and Sedalia, Missouri ("Machens–Sedalia Segment"). That certification arose in the following way. On March 5, 1993, plaintiffs filed their complaint in this court seeking compensation under the Fifth Amendment for property taken by the federal government. The plaintiffs based their takings claim on two government actions: (1) the Interstate Commerce Commission ("ICC")[2] decision of March 6, 1987 authorizing the abandonment of the Machens–Sedalia Segment of the Missouri–Kansas–Texas ("MKT") railroad and its use as a public recreation trail; and (2) the ICC order of April 22, 1987 authorizing the issuance of a certificate of interim trail use ("CITU") for the Machens–Sedalia Segment.[3]

Along with their complaint, plaintiffs filed a motion to certify a class action. In their motion, plaintiffs identified the class as those owners whose property has been taken as a result of the MKT railroad right of way being converted into a recreation trail from "St. Charles and Sedalia, Missouri." The matter was stayed pending a decision by the Federal Circuit Court of Appeals in *Preseault v. United States*, 100 F.3d 1525 (Fed. Cir.1996) (en banc).

On July 2, 1998, this court issued a decision granting plaintiffs' motion to certify this as a class action. In its opinion, the court referred to plaintiffs as those owners whose property is "traversed by the Katy Trail, a recreational trail located between Machens and Sedalia, Missouri," *Moore*, 41 Fed.Cl. at 396, and it stated that the "class shall consist of landowners whose property is burdened by the Katy Trail." *Id.* at 400.

Unbeknownst to counsel, on May 13, 1988, the ICC, ruling on a separate abandonment application, had authorized the abandonment of the Sedalia–Clinton Segment of the MKT railroad line. Although the ICC found that the corridor was suitable for other public use, no party had applied for a public use condition at that time. In October of 1990, the Missouri Pacific Railway Company ("MP"), a successor in interest to MKT, and the Missouri Rail Trail Foundation ("MRTF") jointly petitioned the ICC to reopen proceedings on the Sedalia–Clinton Segment. Finding it still had jurisdiction over the matter because the railroad line was still intact, the ICC reopened the proceedings and issued a CITU on April 18, 1991, allowing MP to negotiate with MRTF for interim trail use of the corridor.[4]

The original plaintiffs' theory is that a taking occurred when the ICC authorized the conversion of the right of way to trail use and then issued the CITU for the Machens–Sedalia segment on April 22, 1987. Plaintiffs made no mention of the ICC's actions regarding the Sedalia–Clinton Segment in their amended complaint. As counsel for plaintiffs candidly conceded during oral argument, counsel did not learn of the Missouri Department of Natural Resources' ("MDNR") plan to extend the trail from Sedalia to Clinton, Missouri until recently. It was not counsel's intention, at the time of the original filings, to include those additional owners of proper-

**2.** The ICC was replaced by the Surface Transportation Board in 1995. To avoid confusion, this order will use the term ICC.

**3.** The ICC issued the CITU in response to an application by the Missouri Department of Natural Resources ("MDNR") to use the segment as a public recreational trail. The CITU permitted MKT to discontinue service along the segment, salvage its equipment, and negotiate with MDNR for interim trail use. Subsequently, MKT and MDNR executed an interim trail use agreement which allowed MDNR use of the segment as a public recreational trail while preserving the corridor for future railroad use.

**4.** On October 16, 1991, the ICC extended the CITU for an additional 180 days because MP and MRTF had yet to execute an agreement.

ty traversed by the Sedalia–Clinton Segment of the Katy Trail. Those individuals, in other words, were not inadvertently excluded.

### DISCUSSION

RCFC 15(a) permits a party to amend its pleading after a response is served only by leave of court, but that "leave shall be freely granted." The difficulty, or futility, of allowing leave in this case is that the limitations period for the movants ran in 1997.[5] They thus must rely on relation back of their cause of action to the original date of filing for the current class, in 1993.

Whether amendment would be futile, i.e., whether the claims of the new plaintiffs relate back, in turn depends on whether "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading." RCFC 15(c).[6] The putative class members argue that their claims meet the transaction or occurrence test because they involve the same railroad line, the same federal statute, and same state property law as those of the original complaint, as amended, and thus get the benefit of the original filing date. We disagree for two reasons.

■ The Court of Claims held that a claim arises out of the same conduct, transaction, or occurrence as set forth in the original pleading if "the general fact situation or the aggregate of the operative facts underlying the claim for relief in the first petition gave notice to the government of the new matter." *Vann v. United States,* 190 Ct.Cl. 546, 557, 420 F.2d 968, 974 (1970); *see also Snoqualmie Tribe v. United States,* 178 Ct.Cl. 570, 587–88, 372 F.2d 951, 959–61 (1967). The court in *Vann* found it dispositive that the amendment purported to add only additional damages arising out of the same contract claim. The court treated the contract, the dispute at the administrative level, and the appeal to the board of contract appeals as all of one piece.

The *Vann* case did not involve an attempt to add new plaintiffs. But the general inquiry—whether the government was on notice of the substance of the claim—would appear to be controlling. This is borne out by the comments to Federal Rule 15. The commentary focuses on adding defendants, stating that the key issue is one of notice:

> if, within the applicable limitations period, the party brought in by amendment, first, received such notice of the institution of the action—the notice need not be formal—that he would not be prejudiced in defending the action, and, second, knew or should have known that the action would have been brought against him initially had there not been a mistake concerning the identity of the proper party.

Fed.R.Civ.P. 15, *commentary.* With respect to adding plaintiffs, the following is added: "The relation back of amendments changing plaintiffs is not expressly treated in revised Rule 15(c) since the problem is generally easier. Again the chief consideration of policy is that of the statute of limitations, and the attitude ... extends by analogy to amendments changing plaintiffs." *Id.*

The lesson to be drawn from this commentary is that the key issue is one of notice to the defendant of the claim itself. One clear instance in which it would be unfair not to permit relation back is when the defendant understands from the outset that the wrong persons have been named as plaintiffs, or that persons have been inadvertently omitted. *See Morin v. Trupin,* 778 F.Supp. 711, 735 (S.D.N.Y.1991) ("Rule 15(c) stands as a

---

5. The persons now seeking to join the action also contend that the authorization of abandonment (in 1990) and the issuance of the CITU (in 1991) precipitated a taking, only in their case it was a different CITU, the one for the Sedalia–Clinton segment. Whether it is either action individually or both jointly which allegedly resulted in a taking, a new complaint would be untimely. Both actions occurred more than six years before the attempt to add those landowners.

6. Although the rules of this court (RCFC) vary in some respects from Rule 15 of the Federal Rules of Civil Procedure, in this, the primary relevant respect, they are the same. Commentary to the federal rule and cases under it are thus helpful in understanding what is meant by arising "out of the same conduct, transaction, or occurrence."

remedial device for adding or substituting a party who 'but for a mistake concerning the identity of the proper party' would have been named originally"). The claim itself remains the same, only the parties change.

■ These factors cannot be said to apply here. Not only are the parties changing, but the claim itself is changing. Simply adding additional landowners to the existing complaint would be insufficient as that complaint involves only the Sedalia–Clinton Segment of the trail. The facts precipitating a taking, in other words, would be insufficient to state a claim for those landowners now seeking to join. With regard to the additional segment, the ICC ruled on a separate abandonment application and issued a separate CITU. The existing and proposed plaintiffs are thus alleging two separate takings. The alleged taking for Sedalia–Clinton Segment, according to plaintiffs, occurred over three years later than the Machens–Sedalia Segment and involved separate government action.[7]

Excluding the legal components of commonality, the only common facts are that the CITUs involved the same railroad in the same state. If these were sufficient points of commonality, the government would be treated as on notice of all claims arising out of any CITU issued along the MP rail line in Missouri. The court holds that the required notice involves more than merely the suspicion that similar claims are likely to arise out of the same federal legislation. The "claims" therefore are not identical. We hold that the claims of the landowners now seeking to join the class did not arise from the same "general fact situation presented in the original pleading."

**7.** Unlike the circumstances with respect to the Machens–Sedalia Segment, the Sedalia–Clinton Segment was not approved for use as a recreation trail at the time of abandonment because there had been no application to the ICC for

■ Plaintiffs offer as an alternative theory for relation back that the limitations period was tolled during the lengthy stay in this proceeding prompted by the appeal in *Preseault.* Plaintiffs are correct that delay before entering a ruling on class certification normally tolls the limitations period for any party who, while nominally covered by the original filing, may ultimately be excluded in the ultimate class ruling. *See Voilas v. General Motors Corp.,* 173 F.R.D. 389, 394–96 (D.N.J.1997); *Moore's Federal Practice* ¶ 15.19[2] (2d ed.1995). To be helped by that bit of jurisprudence, however, the persons attempting to join now would have to have been inchoate in the original complaint. The putative plaintiffs assume the necessary conclusion, in other words. As non-parties, persons not nominally covered by the initial definition of the class obviously were not subject to the stay. They could have attempted to join the class, or file their own separate action. Neither before nor after the stay did the putative plaintiffs indicate to this court any intent to join the class.

## CONCLUSION

For the reasons stated, plaintiffs' motion for leave to amend the complaint to add additional plaintiffs is denied. The class shall consist of landowners whose property is burdened by the Machens–Sedalia Segment of the Katy Trail.

approval of an alternate public use. Such an application was not filed until more than two years after the ICC authorized abandonment. Further, the ICC did not issue a CITU for the Sedalia–Clinton Segment until April 18, 1991.